# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 3:09-00233

PATRICK B. ANDERSON

## MEMORANDUM OPINION AND ORDER

On April 30, 2010, a jury found Defendant, Patrick Anderson, guilty on two counts: 1) Bankruptcy Fraud, in violation of 18 U.S.C. § 157(1); and, 2) Fraudulent Transfer and Concealment of Assets in violation of 18 U.S.C. § 152(7) and 2. Defendant Anderson has now filed a motion for judgment of acquittal or, alternatively, for a new trial (Doc. 62). For the reasons explained below, the Court **DENIES** the motion.

## Standard of Review

In determining whether to grant a motion for judgment of acquittal, the Government is entitled to the benefit of all reasonable inferences, and credibility of the witnesses should not be considered. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982) (reasonable inferences); *United States v. Saunders*, 886 F.2d 56, 60 (4th Cir. 1989) (witness credibility). If, viewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt, then a motion for judgment of acquittal must be denied. *Tresvant*, 677 F.2d at 1021. The role of the Court is to determine whether sufficient

evidence existed for the jury's verdict. The Court does not function as a re-trier of the facts and it cannot supplant the jury's judgment with alternative factual findings.

The Court has more latitude in determining whether to grant a motion for new trial. Rule 33 of the Federal Rules of Criminal Procedure provides that, upon motion of the defendant, "the court may grant a new trial to that defendant if the interests of justice so require." Unlike a motion for judgment of acquittal, the Court need not weigh the evidence in a light most favorable to the Government. *See U.S. v. Arrington*, 757 F.2d 1484 (4th Cir. 1985). Rather, the Court's discretion is broad and the Court may evaluate the evidence, including the credibility of witnesses. *See Arrington*, 757 F.2d at 1485.

While the Court has broad discretion in determining whether a new trial is warranted, that discretion should be exercised sparingly. *See Arrington*, 757 F.2d at 1486. Only "[w]hen the evidence weighs so heavily against the verdict that it would be unjust to enter judgment" should the Court grant a new trial. *See Arrington*, 757 F.2d at 1485 *citing Tibbs v. Florida*, 457 U.S. 31 (1982). In other words, "the ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d. 129, 134 (2d Cir. 2001).

**Analysis**

Defendant has asserted three grounds for judgment of acquittal or a new trial. He first argues that the evidence elicited by the Government was insufficient to support a conviction on the charges against him. Specifically he argues that there was no evidence of a scheme or artifice to defraud and no evidence of the requisite mental state to support the conviction on Count I – bankruptcy fraud. Further, he argues that there was insufficient evidence to show that he participated in a fraudulent

transfer or concealment of assets or otherwise acted in a fraudulent manner to support the conviction in Count II – fraudulent transfer or concealment of assets.  Secondly, Mr. Anderson argues that the Court erred by refusing to include Defendant's proposed jury instruction concerning the definition for "intent to defraud."  Third, and finally, Defendant argues that the Court erred by permitting the Government to proceed on an aiding and abetting theory pursuant to 18 U.S.C. § 2(b), despite the fact that the indictment was not consistent with that charge.  For the reasons explained below, the Court **FINDS** that none of these arguments, or evidence relied upon in support, carries of the burden necessary for this Court to grant the motion for acquittal or new trial.

**I.      There Was Sufficient Evidence to Support the Jury's Finding of Guilt on Both Counts**

At trial, the Government's case-in-chief was largely dependant upon the testimony of Herman and Peggy Matney, clients of Mr. Anderson, who retained him to represent them in bankruptcy proceedings.  Herman and Peggy Matney testified that they wished to file for bankruptcy in order to discharge some of their debts, so that Peggy would not be overburdened if she outlived her husband.  Both testified, however, that they were concerned about losing their home and would not have filed for bankruptcy if they would risk losing their home.  According to the Matneys, Mr. Anderson told them that there were two ways to avoid losing their home.  First, they could take out another loan and use their real estate as collateral.  A second option was to transfer their home to one of their daughters for a year and then have her transfer it back.

The Matneys decided that they did not want to take out another loan as they were already overburdened by debt.  As such they relied on Mr. Anderson's advice and had him transfer the property to one of their daughters, Melissa, with the understanding that it would be transferred back

to them within one year. Mr. Matney testified specifically that they would not have agreed to any permanent transfer of property to their daughter Melissa. They had, in fact, three children and would never considering favoring one over the others. Mr. Matney explained that it was his intention that he and his wife's assets would be split three ways among their children, when the couple passed away. He made clear that the transfer of property, in his mind, was solely for the purpose of keeping it out of the bankruptcy proceeding.

The Matneys paid Mr. Anderson $150 to transfer their property to their daughter, Melissa, which he did. They then proceeded with the bankruptcy process. Because of some confusion and mis-communication the Matneys and Mr. Anderson attempted to separately file their bankruptcy petition on the same day. Mr. Anderson filed first, and the petition was apparently accepted and filed. When the Matney's tried to file they were informed of Mr. Anderson's prior filling. Additionally, they were told by the bankruptcy clerk that there was a problem with their petition because it did not list their home as an asset.

Mr. Anderson does not dispute that he transferred the deed to the Matney's home to one of their daughters, nor that the bankruptcy petition contains no mention of the Matney's home. He testified, however, that the deed of transfer retained a life estate for the Matney's and transferred only the remainder to their daughter. Additionally, he explained that he intended to disclose this life-estate interest on the petition, but simply failed to do so. He explained a series of unfortunate circumstances, including a fire at his office, which put him under a great deal of pressure at the time he filed the petition.

While the jury would have been free to accept Mr. Anderson's explanation, it created a factual dispute with the Matney's testimony. Primarily, his creation of a life estate directly

contradicted Herman Matney's testimony that he would not have favored on daughter over another and only transferred the property with the understanding that title would be returned after one year. Both of the Matney's also testified that they had not heard and were not familiar with the term or concept of a life estate. The jury also heard testimony from Government witnesses (and the defense's own expert) that the plan articulated by Mr. Matney – to transfer the property to a daughter for only one year – was not a legally acceptable method to keep the Matney's property out of bankruptcy. Mr. Anderson, in fact, testified to his understanding that such a scheme would constitute fraud. Based upon this testimony, the record was more than sufficient for the jury to believe the Matney's version of the events in question: that Mr. Anderson agreed to transfer their property to their daughter, file a bankruptcy petition which omitted the property as an asset, and then transfer the property back to the Matneys after one year.

If the jury believed the testimony of the Government's witnesses, there was more than enough evidence to satisfy the requisite elements for both bankruptcy fraud and fraudulent transfer or concealment of assets. The statute defining the crime of bankruptcy fraud provides in relevant part,

> "A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so: 1) files a petition under title 11 . . . [shall be guilty of a crime against the United States]."

18 U.S.C. § 157. As instructed by the Court, to support this charge, the Government had to prove beyond a reasonable doubt the following elements: 1) The defendant devised a scheme or artifice to defraud or had the intention of later devising such a scheme; 2) that he filed a false bankruptcy petition under Title 11; and, 3) and did so with the specific intent to deceive or defraud the creditors

of Herman and Peggy Matney or the Bankrtupcy Court or Bankruptcy Trustee. There was plenary evidence in the record at trial to support a finding of guilt on each of these elements. The plan to transfer the Matney's property to their daughter in order to keep it out of bankruptcy proceedings can easily be considered a scheme or artifice to defraud. There is no dispute that a false bankruptcy petition was filed. The jury was free to find, especially considering Mr. Anderson's admission that he knew a misrepresentation on the petition was illegal, that this was done with the specific intent to deceive of defraud creditors, the bankruptcy court, or the bankruptcy trustee. In short, there is no reason to overturn the jury's verdict of guilt on Count I and the refusal of a new trial would not amount to injustice.

Count II asserts the Mr. Anderson fraudulently transferred or concealed assets as prohibited by 18 U.S.C. § 152(7). This section provides in pertinent part,

> "A person who – in a personal capacity or as an agent or officer of any person . . . in contemplation of a case under Title 11 by or against the person . . . or with the intent to defeat the provisions of Title 11, knowingly and fraudulently transfers or conceals property of such other person . . . [Shall be guilty of a crime against the United States]."

As instructed by the Court, it requires to the Government to prove four elements beyond a reasonable doubt: 1) The defendant acted in the personal capacity or as an agent of the couple identified in the indictment; 2) The defendant participated in the fraudulent transfer or concealment of the property; 3) The transfer was done in contemplation of a case to be filed under Title 11 or with the intent to defeat the provisions of Title 11; and 4) the defendant did so knowingly and fraudulently. Again, accepting the testimony of the Government's witnesses provided the jury with sufficient evidence to find Defendant guilty. There is no dispute that Mr. Anderson acted on behalf

of the Matneys. Transfer of property to the Matneys's daughter to avoid its inclusion in bankruptcy can be considered fraudulent and an attempt to defeat the provisions of Title 11 (the bankruptcy code). Again, Mr. Anderson admitted that filing a false bankruptcy petition was illegal. For these reasons there is no justification for overturning the jury's verdict or injustice in denying the motion for a new trial.

## II.     The Jury Was Properly Instructed on the Requisite Intent to Defraud

Defendant proposed an instruction that would have specified that the jury could not consider whether Herman or Peggy Matney, or anyone other than their creditors, the bankruptcy court or the bankruptcy trustee, could be considered potential victims of the charged scheme to defraud. The Court rejected this instruction. Instead, the Court simply told the jury that in order to convict Mr. Anderson on Count I, they had to find that he had the specific intent to deceive or defraud the creditors of Herman and Peggy Matney or the bankruptcy court or the bankruptcy trustee. Defendant argues that without their instruction the jury was free to mistakenly consider the Matney's the intended victims of the defendant's conduct.

Quite simply the Court disagrees with Defendant's contention. The jury was properly instructed on the law pursuant to 18 U.S.C. § 157, including the requirement that a scheme or artifice to defraud must be formulated with the specific intent to defraud creditors, the bankruptcy court of the bankruptcy trustee. The instruction was clear and, as explained above, there was sufficient evidence in the record to support the jury's finding. While the jurors was not specifically instructed to disregard any effects of Mr. Anderson's conduct on the Matneys, they could not have complied with the instructions if they concluded that the purpose of the fraudulent scheme was only to defraud

the Matneys and not their creditors, the bankruptcy court, or the bankruptcy trustee. As such, the refusal to give Defendant's proposed instruction does not warrant a judgement of acquittal or new trial.

### III. The Court Properly Instructed the Jury on the Requirements of 18 U.S.C. § 2, as Contained within the Indictment

Defendant's final argument is that the Court erred by permitting the Government to proceed with an aiding and abetting theory consistent with 18 U.S.C. § 2(b) in Count 2, when the indictment charged only an aiding and abetting theory consistent with 18 U.S.C. § 2(a). He argues that there was no evidence that the Matneys knowingly directed the defendant to omit any reference to their real estate in the bankruptcy petition which was filed on their behalf. According to Defendant, by improperly offering the § 2(b) instruction, the Court constructively amended the indictment.

Title 18 U.S.C. § 2(b) provides, "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as principal." The Court offered an instruction consistent with this provision, but such instruction was not in error. "An indictment or information need not specifically charge aiding and abetting in order to support a conviction on that charge." *Pigford v. United States*, 518 F.2d 831 (4th Cir. 1975). "Rather, since Section 2 applies implicitly to all federal offenses, all indictments and informations are to be read as if the alternative provided for in Section 2 were embodied in each count thereof." *Id.*

Here, the indictment contained an explicit reference to 18 U.S.C. § 2, without limiting the charge to either § 2(a) or (b). Moreover, the aiding and abetting charge would have been properly given even without a reference to the corresponding statutory provision, as explained by the Fourth

Circuit in *Pigford*. As such, the aiding and abetting instruction was properly given to the jury and does not amount to justification for acquittal or a new trial.

**Conclusion**

For the reasons explained above, the Court **DENIES** Defendant's Motion for Judgment of Acquittal and/or New Trial (Doc. 62). The Court **DIRECTS** the Clerk to send a copy of thi written Opinion and Order to counsel and the defendant, the U.S. Attorney's Office, the U.S. Probation Office, and the U.S. Marshals' Service.

ENTER: August 4, 2010

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE